ESTATE OF LAURA V. LARSEN BELL, DECEASED, LAUREL V. BELL-CAHILL, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF CHARLES C. BELL, DECEASED, LAUREL V. BELL-CAHILL, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 11159-86, 11160-86.     Filed March 30, 1989.

*John Gigounas* and *Edward B. Simpson*, for the petitioners. *Margaret A. Martin*, for the respondent.

OPINION

FAY, *Judge:* Respondent determined a deficiency in Federal estate taxes for the Estate of Laura V. Larsen Bell in the amount of $1,143,839, and for the Estate of Charles C. Bell in the amount of $1,130,668.

These cases were consolidated for briefing and opinion and were submitted fully stipulated pursuant to Rule 122.[1] The stipulated facts and the exhibits attached thereto are incorporated herein by reference. After concessions,[2] the issue for decision is the amount by which each petitioner has overpaid its respective estate taxes and interest.

Laura V. Larsen Bell and Charles C. Bell (Mrs. Bell and Mr. Bell, respectively) resided in Sacramento, California, at the times of their deaths. Mrs. Bell died on February 18, 1982, approximately 2 months prior to Mr. Bell's death on April 21, 1982. Laurel V. Bell-Cahill (the executrix), a resident of Sacramento, California, at the time the petitions in these cases were filed, is the executor of both the Estate of Laura V. Larsen Bell and the Estate of Charles C. Bell (Mrs. Bell's Estate and Mr. Bell's Estate, respectively, or "petitioners," collectively).

Mrs. Bell's Estate timely filed a Federal estate tax return on February 22, 1983, as did Mr. Bell's Estate on April 21, 1983. Mr. and Mrs. Bell owned and operated, as principal stockholders, a closely held California corporation known as Charles C. Bell, Inc. (Bell, Inc.). In its original estate tax return, as an amount includable in the gross estate, Mrs. Bell's Estate reported that its Bell, Inc. stock had a value

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect, unless otherwise indicated.

[2] The parties have reached agreement as to the adjustments determined in each petitioner's notice of deficiency as follows:

(a) Petitioners are each entitled to a credit for State estate, inheritance, legacy or succession taxes under secs. 2011(b) and 2011(c) in the maximum amount allowable under sec. 2011(b);

(b) Each petitioner must include in their gross estate real property with a date of death fair market value of $353,812.50; and,

(c) The amount of administrative costs the Estate of Laura V. Larsen Bell and the Estate of Charles C. Bell are entitled to deduct, exclusive of the interest expense paid and/or incurred on the portion of the tax liability properly deferred under sec. 6166, is $45,421 and $46,280, respectively.

of $2,497,881. Mr. Bell's Estate reported, in its original estate tax return, that the Bell, Inc. stock includable in its gross estate had a value of $2,492,279.

At the time of filing the estate tax returns for Mrs. and Mr. Bell's estates, the executrix made a proper and timely election to defer payment of a portion of the estate tax liability reflected on such returns, pursuant to section 6166. In accordance with such election, petitioners were permitted to spread the payment of a portion of their taxes—i.e., that portion of their estate taxes attributable to a closely held business—over a period of 14 years. For the first 4 of such 14 years, petitioners were required to pay only interest[3] on the taxes deferred. For the succeeding 10 years, petitioners were then required to pay the taxes deferred, in ten equal installments, plus interest on the taxes remaining unpaid. The portion of estate tax liability which the executrix elected to defer for each petitioner under section 6166 was that portion attributable to the value of the stock each held in Bell, Inc.

Mrs. Bell's Estate originally reported an estate tax liability of $1,085,519. Mr. Bell's Estate originally reported an estate tax liability of $1,111,672. The portion of estate tax liability the executrix elected to defer on each petitioner's behalf, and the installment payments of tax elected to be made by each petitioner, were as follows:

*Installment payments of tax elected by Mrs. Bell's estate*

| Due date | Amount |
| --- | --- |
| Nov. 16, 1987 | $35,222 |
| Nov. 16, 1988 | 35,222 |
| Nov. 16, 1989 | 35,222 |
| Nov. 16, 1990 | 35,222 |
| Nov. 16, 1991 | 35,221 |
| Nov. 16, 1992 | 35,221 |
| Nov. 16, 1993 | 35,221 |
| Nov. 16, 1994 | 35,221 |
| Nov. 16, 1995 | 35,221 |
| Nov. 16, 1996 | 35,221 |
| Total liability deferred | 352,214 |

---

[3]The applicable rate of interest with respect to all or part of the taxes deferred was at a rate of only *4 percent.* Sec. 6166(f) and sec. 6601(j). The amount of taxes deferred which is eligible for such reduced interest rate is determinable under sec. 6601(j)(2), which provides, generally, that the 4 percent rate is permitted with respect to the first $345,800 of tax deferred, less the decedent's unified credit.

*Installment payments of tax elected
by Mr. Bell's estate*

| Due date | Amount |
|---|---|
| Jan. 20, 1988 | $35,439 |
| Jan. 20, 1989 | 35,439 |
| Jan. 20, 1990 | 35,439 |
| Jan. 20, 1991 | 35,439 |
| Jan. 20, 1992 | 35,439 |
| Jan. 20, 1993 | 35,439 |
| Jan. 20, 1994 | 35,439 |
| Jan. 20, 1994 | 35,439 |
| Jan. 20, 1995 | 35,439 |
| Jan. 20, 1996 | 35,439 |
| Jan. 20, 1997 | 35,439 |
| Total liability deferred | 354,390 |

Each petitioner's election under section 6166, in the form such election was made on their respective estate tax returns, was accepted by respondent as permissible under that section.

In accordance with their estate tax returns and the section 6166 elections made thereon, the executrix made payments of tax and interest to respondent on each petitioner's behalf, as of the time this case was submitted for decision, as follows:

*Payments by Mrs. Bell's estate*

| Date | Tax | Interest |
|---|---|---|
| Nov. 19, 1982 | $733,000.00 | - - - |
| Feb. 22, 1983 | 305.00 | - - - |
| Nov. 14, 1983 | - - - | $22,369.72 |
| Nov. 5, 1984 | - - - | 19,630.53 |
| Nov. 19, 1985 | - - - | 19,630.53 |
| Nov. 26, 1985 | - - - | 728.25 |
| Nov. 18, 1986 | - - - | 18,621.93 |
| Nov. 23, 1987 | 34,946.90 | 18,167.78 |
| | 768,251.90 | 99,148.74 |

*Payments by Mr. Bell's estate*

| Date | Tax | Interest |
|---|---|---|
| Jan. 25, 1983 | $751,600.00 | - - - |
| Mar. 24, 1983 | 5,682.00 | - - - |
| Jan. 23, 1984 | - - - | $20,029.83 |
| Jan. 21, 1985 | - - - | 18,730.85 |
| Jan. 29, 1986 | - - - | 23,837.22 |
| Jan. 9, 1987 | - - - | 18,614.05 |
| Jan. 20, 1988 | - - - | 18,555.47 |
| Jan. 26, 1988 | 35,438.50 | - - - |
| | 792,720.50 | 99,767.42 |

On August 16 and August 14, 1985, respectively, Mrs. Bell's Estate and Mr. Bell's Estate filed with respondent claims for refunds of estate taxes. Petitioners' claims for refund were based upon, inter alia, an adjustment to the value of the Bell, Inc. stock allegedly includable in each of Mr. and Mrs. Bell's respective gross estates. Each such claimed adjustment was due to a second appraisal, which the executrix caused to be performed, of the value of Bell, Inc.'s underlying real property holdings.

On January 30, 1986, respondent issued a separate statutory notice of deficiency to each petitioner which determined, inter alia, that their claims for refund would be denied and that a value *higher* than the value originally reported by petitioners would be ascribed to their Bell, Inc. stock. After petitions were filed in these cases, the parties reached an agreement as to the value for the Bell, Inc. stock each petitioner was required to include in their respective gross estates. The various values which have been ascribed to each petitioner's Bell, Inc. stock are reflected by the following:

| Value per: | Mrs. Bell's estate | Mr. Bell's estate |
| --- | --- | --- |
| Return | $2,497,881.00 | $2,492,279 |
| Notice of deficiency | 3,508,299.00 | 3,508,299 |
| Agreement | 1,018,661.25 | 1,077,350 |

Taking into consideration the agreement reached concerning the value of the Bell, Inc. stock includable by each petitioner in their respective gross estates, and considering the other issues settled by the parties, there is no dispute that the total amount paid by each petitioner in estate taxes exceeds the total amount of tax they each ultimately owed with respect to their respective gross estates. Thus, the parties agree that petitioners have each made an overpayment of their estate taxes. The parties disagree, however, as to the amount of the overpayment made by each petitioner. This disagreement results from their conflicting views of what Congress' intent is under sections 6403, 6402, and 6166.

Section 6403 provides in relevant part:

In the case of a tax payable in installments, if the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited

against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in section 6402.

Section 6402(a) provides in relevant part:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall * * * refund any balance to such person.

Respondent and the executrix agree that the first step in computing the amount of each petitioner's overpayment is to determine what installment payments in tax would be due from each, to date, assuming that the executrix had correctly calculated the total amount of estate tax due from, and the amount of section 6166 installments to be made by, each petitioner, when the executrix filed the respective estate tax returns. Respondent and the executrix disagree, however, as to the next step in the equation, because they disagree as to the applicability of section 6403.

Respondent asserts that the amount of each petitioner's overpayment is limited to the excess of the amounts each petitioner has paid to date over the total amount of estate taxes ultimately *owed* by each petitioner, respectively. Respondent's computation of the estates' overpayments results from his application of section 6403 to the installment payments which were actually made by petitioners, and to those installment payments which properly should have been made using a correct value for the Bell, Inc. stock. Respondent argues that the excess of the amounts actually paid over the amounts which should have been paid, had section 6166 been applied to the correct amount of estate tax, should be viewed as an overpayment by each petitioner of their respective corrected section 6166 installments. Respondent then argues that any such overpayments should, under section 6403, be credited towards the future, corrected section 6166 installments of each petitioner which are, concededly, not yet due. Respondent concludes that only the excess of the amount paid, after such crediting to future installments, should be considered

in determining the amount of petitioners' overpayments under sections 6403 and 6402.

The executrix' computation of the amount of each petitioner's overpayment results from her argument that section 6403 does not apply to the payment of taxes which are otherwise deferrable under section 6166. The executrix argues that petitioners should be allowed to continue deferring their estate taxes as though the proper estate valuation for the Bell, Inc. stock was determined on the date petitioners each filed their estate tax return. That is, the executrix is essentially requesting determinations of overpayment with respect to all tax payments petitioners have made to the extent such payments are not yet due, under corrected section 6166 installment schedules for each petitioner, so that petitioners can have the benefit of paying those estate taxes in installments in the future, and of paying interest thereon at a substantially reduced rate as provided by sections 6166(f) and 6601(j), see note 2 *supra.* The executrix argues that Congress did not intend section 6403 to be applied in these circumstances, where the result would be, effectively, a denial to petitioners of the very valuable benefits of section 6166.

The executrix contends that section 6166 was, generally, intended to grant relief to those estates comprised primarily of family farms and family-owned businesses. Such relief was intended to be effected, the executrix asserts, by allowing the estate taxes incurred in connection with such enterprises to be paid over a term of years, rather than forcing the survivors to dispose of part or all of the family enterprise to pay the estate taxes owed with respect thereto. Further, the executrix asserts that Congress intended that the benefits of section 6166 be denied a taxpayer *only* under certain, limited circumstances, i.e., those delineated by section 6166(g),[4] which section concerns

---

[4]Sec. 6166(g) provides in general that:

(1) if 50 percent or more of the closely held business, with respect to which estate taxes were deferred, is distributed, sold, exchanged, or otherwise disposed of, then the estate taxes otherwise deferrable are due upon notice and demand by respondent, sec. 6166(g)(1);

(2) if the closely held business, with respect to which the taxes were deferred under sec. 6166, has undistributed net income for any taxable year ending after the due date of the first installment, then an amount equal to such undistributed net income shall be paid in satisfaction of the taxes deferred, sec. 6166(g)(2); and

when payments previously deferred under section 6166 will be accelerated and become due upon notice and demand from respondent. That is, the executrix argues that section 6166(g) is an *exclusive* list of situations in which Congress intended for the benefits of installment payments under section 6166 to be curtailed. The executrix argues that section 6403 should not be applied to the payments petitioners have made in this case because the effect would be to "accelerate" the payments not yet due under section 6166, in a circumstance not intended by Congress. Under this interpretation of the applicable sections, the executrix asserts that unless each petitioner's circumstances are described by one of the paragraphs under section 6166(g), then petitioners' ability to continue paying their estate taxes on an installment basis should not be denied them. The executrix then asserts that the amount of petitioners' overpayments includes those payments which would have been deferred had petitioners used correct values for their Bell, Inc. stock when establishing their respective installment payment schedules.

As expressed above, petitioners' arguments appear to question the correctness of respondent's determinations that petitioners cannot avail themselves of the continued benefits of section 6166. Because petitioners' arguments are so stated, and because we have previously held that "this Court *lacks* jurisdiction over the section 6166 election determination made by respondent,"[5] we must first determine whether we have jurisdiction over the matter in controversy.

In both *Estate of Meyer v. Commissioner*, 84 T.C. 560 (1985), and *Estate of Sherrod v. Commissioner*, 82 T.C. 523 (1984), revd. on other grounds 774 F.2d 1057 (11th Cir. 1985), we were asked to decide whether respondent's determination—that the taxpayers there involved were not entitled, under section 6166, to pay their estate taxes on the installment basis—was correct. In both cases we found that

---

(3) if a payment of principal or interest otherwise due under the elected payment schedule is not paid timely, then the unpaid portion of the tax otherwise deferrable is due upon notice and demand by respondent, sec. 6166(g)(3).

[5]*Estate of Meyer v. Commissioner*, 84 T.C. 560, 562 (1985), (emphasis in original), citing *Estate of Sherrod v. Commissioner*, 82 T.C. 523 (1984), revd. on other grounds 774 F.2d 1057 (11th Cir. 1985). See also *Estate of Heffley v. Commissioner*, 89 T.C. 265, 275-277 (1987).

respondent's denial of such an election did "not create, or affect the amount of, a deficiency." *Estate of Meyer v. Commissioner, supra* at 561 n. 3; *Estate of Sherrod v. Commissioner, supra* at 537. Accordingly, we held in both cases that we had "no jurisdiction to decide the propriety of a denial of an election to pay the estate tax in installments in as much as the denial is not attributable to a deficiency." *Estate of Meyer v. Commissioner, supra* at 561, citing *Estate of Sherrod v. Commissioner, supra.* We find, however, that the present case is distinguishable from those two cases.

Our jurisdiction with respect to overpayments is established by section 6512(b). Section 6512(b)(1) provides in relevant part:

if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment * * * of estate tax in respect of the taxable estate of the same decedent, * * * in respect of which the Secretary determines the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court becomes final, be credited or refunded to the taxpayer.

Pursuant to such section, insofar as respondent's determination concerning petitioners' entitlement to the continued benefits of section 6166 impacts upon the amounts of petitioners' overpayments, we have jurisdiction to express an opinion as to the propriety of respondent's section 6166 determination.

In *Estate of Meyer v. Commissioner, supra,* and in *Estate of Sherrod v. Commissioner, supra,* we found that respondent's determination, concerning the availability to such taxpayers of section 6166, did not impact upon the amounts of those taxpayers' deficiencies. In the case at hand, however, respondent's denial of the continued benefits of section 6166 has the direct effect of substantially reducing the amount of petitioners' overpayments. Accordingly, we find that the present case is distinguishable from that of *Estate of Meyer v. Commissioner, supra,* and of *Estate of Sherrod v. Commissioner, supra,* and we hold that we do have jurisdiction to determine the propriety of respondent's denials to petitioners of the continued benefits of section

6166, but only insofar as such determinations impact upon the amounts of petitioners' overpayments. Having found that we have the jurisdiction to do so, we now turn to address the parties' respective arguments.

Although we agree with the executrix that Congress' intent in enacting section 6166 was to prevent the forced liquidation of family farms and other closely held businesses to pay estate taxes,[6] we do not agree that section 6166(g) is the *exclusive* delineation of situations in which the continued benefits of section 6166 were intended by Congress to be curtailed. Rather, we agree with respondent that section 6403 may also apply so as to end the deferral of certain estate tax payments, when such payments are actually made, under section 6166.

We view the benefits conferred by section 6166 as being similar to those benefits conferred by other statutory provisions which deal with deductions, exemptions, and exclusions from tax. That is, we find that the ability of a taxpayer to defer his taxes, to pay those taxes on an installment basis, and to pay interest on such deferred taxes at a substantially reduced rate, are privileges granted to the taxpayer by Congress as a matter of legislative grace. As such, we find that the provisions of section 6166 which grant such privileges should be given a strict and narrow construction, as are the provisions granting deductions, exemptions, and exclusions from tax. See *Commissioner v. Jacobson,* 336 U.S. 28 (1949); *Helvering v. Northwest Steel Rolling Mills, Inc.,* 311 U.S. 46 (1940); *Stanford v. Commissioner,* 297 F.2d 298 (9th Cir. 1961); *Collin v. Commissioner,* 29 T.C. 670 (1958); *Oliva v. Commissioner,* 25 T.C. 1289 (1956).

Further, we note that when a court determines the applicability of a particular statute to a particular set of circumstances, its first obligation is to give effect to the intent of Congress in enacting the statute in question. See *Flora v. United States,* 357 U.S. 63 (1958). Moreover, when a court attempts to determine the intent of Congress, its first reference should be to the literal meaning of the words

---

[6]See Deficit Reduction Act of 1984: Explanation of Provisions Approved by the Committee on March 21, 1984, S. Print 98-169 V.I., p. 712 (Finance Comm. 1984).

used in the statute under contemplation. *United States v. American Trucking Associations, Inc.,* 310 U.S. 534 (1940).

Looking to the plain meaning of the words used in section 6403, we find that statute to be clear and unambiguous; it applies to "a tax payable in installments." Further, we find that section 6403 becomes applicable to estate taxes through the election available to taxpayers under section 6166. Pursuant to section 6166, a taxpayer is permitted to elect to pay a determinable portion of its estate taxes on an installment basis. If the section 6166 election is made, any payment made as an installment by the electing taxpayer is subject to the provisions of section 6403 and, if the payment made exceeds the installment then due, such excess is "credited against the unpaid installments, if any," pursuant to section 6403.

In the cases at bar, each petitioner made the election permitted by section 6166 to pay a portion of its estate taxes on an installment basis. Having made that election, petitioners' payments of their estate taxes thereby became subject to the provisions of section 6403. Subsequent to making the election, each petitioner "paid as an installment of the tax more than the amount determined to be the correct amount of such installment." Section 6403 dictates that such amounts, paid in excess of the correct amount of each petitioner's installments, be credited against each petitioner's respective unpaid section 6166 installments.

There is no authority supporting the executrix' assertion that section 6166(g) is an *exclusive* list of *all* situations in which Congress intended for the benefits of section 6166 to be subject to curtailment. Rather, section 6166(g) is a list of situations in which *respondent* is able to *require* that the taxpayer's section 6166 installments be accelerated, and where *respondent* may *require* that the taxpayer make full payment of estate taxes which previously had been permitted to be deferred. In contrast, section 6403 governs those installment situations in which the *taxpayer* can, intentionally or unintentionally, cause the satisfaction of a tax liability which is *owed* but which is not yet *due*. In such a situation, respondent is permitted to credit the not-yet-due payment the taxpayer has made towards the satisfaction of

the liability which is ultimately owed by that taxpayer, but which otherwise would have been deferrable.

The executrix contends that such a construction of section 6403 works to the disadvantage of taxpayers who have *over estimated* the value of their gross estate, and who have thus caused an *overpayment* of taxes. The executrix asserts that such disadvantageous treatment of taxpayers *overpaying* their tax could not have been intended by Congress, in light of section 6166(e), which grants the continued benefit of paying on the installment basis to taxpayers who *under estimated* the value of their gross estate in computing their section 6166 payments. Section 6166(e) provides in relevant part:

(e) PRORATION OF DEFICIENCY TO INSTALLMENTS.—If an election is made under subsection (a) to pay any part of the tax imposed by section 2001 in installments and a deficiency has been assessed, the deficiency shall * * * be prorated to the installments payable under subsection (a). The part of the deficiency so prorated to any installment the date for payment of which has not arrived shall be collected at the same time as, and as a part of, such installment. The part of the deficiency so prorated to any installment the date for payment of which has arrived shall be paid upon notice and demand from the Secretary. This subsection shall not apply if the deficiency is due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax.

Because Congress granted taxpayers, with respect to whom it develops that there is a *deficiency* in estate taxes, the ability to continue making payments of their estate taxes on the installment basis, the executrix asserts that the same benefit should be allowed taxpayers with respect to whom it develops that there is an *overpayment* of estate taxes.

We do not agree, however, with the executrix' interpretation of section 6166(e). Rather, we find that, if Congress had intended section 6166(e) to apply to taxpayers for whom it is determined an overpayment exists, Congress would have explicitly so provided. In drafting section 6166(e), Congress specifically considered how a taxpayer's payment of its estate taxes on the installment basis would be affected if, subsequent to the time of making its section 6166 election, it is determined that the taxpayer erred in determining the amount of tax which was to be paid. See section 6166(e). When Congress considered such potentiality, we must

assume that it was aware that the correct amount to be paid as an installment payment could ultimately be determined to be an amount greater than, *or lesser than,* the amount estimated by the taxpayer when it made its section 6166 election. Because Congress must be presumed to have been aware of *both* possibilities, and because Congress chose to address only the situation where the payments actually due are determined to be *greater than* the payments the taxpayer has made until that time, it must also be presumed that Congress did not intend to allow the continuation of the installments method of payment where the payments actually due are *less than* the payments of tax the taxpayer has thus far made, at least to the extent of such excess. This is particularly true when, as here, Congress has enacted a statute—i.e., section 6403—which directly addresses the situation unaddressed by the section being relied upon, section 6166(e).

We find further support for our interpretation of section 6403—i.e., that it is applicable to the estate taxes payable by installments under section 6166—from example (1)(i) of section 20.6166-1(i), Estate Tax Regs. That example provides:

Based upon values shown on decedent A's timely filed estate tax return, 60 percent of the value of A's adjusted gross estate consisted of a farm which was a closely held business within the meaning of section 6166. A's executor, B, made a protective election under section 6166 when he filed A's estate tax return. B also applied for an extension of time under section 6161 to pay $15,000 of the $30,000 of estate tax shown due on the return. The requested extension was granted and was renewed at the end of 1 year. Eighteen months after the return was filed and after examination of A's estate tax return, the value of the farm was found to constitute 67 percent of the adjusted gross estate. B entered into an agreement consenting to the values as established on examination and to a deficiency of $5,000. B then filed a final notice of election under section 6166, choosing a 5-year deferral followed by 10 annual installment payments and thereby terminated his extension under section 6161 because that amount of tax was then included under the section 6166 election. B could have extended payment of 67 percent of the total estate tax, or $23,450. $23,450 is eligible for installment payments under section 6166 and the section 6166 election is considered to be for that amount. B is considered to have prepaid $3,450 of tax since only $20,000 of tax remained unpaid. The $3,450 is attributed to the first installment of $2,345 and to $1,105 of the second installment which would have been payable under the section 6166 election.

Under the terms of such example, $35,000 is A's total estate tax liability: $30,000 reported in A's original estate tax return plus a deficiency of $5,000, established on examination and agreed to by B. Of such $35,000 liability, 67 percent, or $23,450, could be deferred by A under section 6166, and $11,550 could not be deferred. B paid $15,000 towards the estate tax liability of A, B having requested and received an extension of time to pay, under section 6161, with respect to only $15,000 of the originally reported $30,000 estate tax liability.

Although no specific reference is made to section 6403 in the above-quoted regulatory example, the $15,000 paid by B is allocated in accordance with the provisions of section 6403. First, $11,550 of the $15,000 paid is allocated towards the estate taxes which could not be deferred. Second, $2,345 is attributed—i.e., *credited*—to the first $2,345 installment which would be due at some point in the future, but which is, under the example, not yet due under section 6166. Finally, of the $15,000 paid, the remaining $1,105 is credited towards the second, as-yet-undue, section 6166 installment owed by A. Thus, pursuant to both the clear meaning of the language used in section 6403, and the regulations promulgated under section 6166, it is clear that section 6403 applies to the installment-method payment of estate taxes permitted by section 6166. That B, in the above-quoted example, made only a protective election under 6166 and did not elect section 6166 outright, and that B took advantage of section 6161, in no way affects this determination.

The executrix cites two cases as authority for her interpretation of sections 6166 and 6403: *Snyder v. United States,* 630 F. Supp. 182 (D. Md. 1986); and *Eichheim v. United States,* an unreported case (D. Colo. 1988, 61 AFTR2d 88-1367, 88-1 USTC par. 13,764). With respect to both cases, however, we respectfully decline to agree with such Courts' interpretations of Congress' intent under section 6403.

Under the executrix' interpretation of the section in question, petitioners would be entitled to an overpayment as to those installment payments which they have paid but which are not yet due. If such overpayments were deter-

mined, petitioners would be permitted to re-establish the deferral of their estate taxes under section 6166, and would be required to pay to respondent, in the future, interest on those amounts continued to be deferred. On the belief that we will adopt her interpretation of section 6403, the executrix also here asserts a claim that the interest each petitioner would so pay in the future, on the taxes for which continued deferral would be permitted under the executrix' statutory interpretation, will be deductible under section 2053(a)(2).

In response to such claim, however, we point out that we do not accept the executrix' construction of the sections in dispute. Rather, we agree with respondent's interpretation of the statute, which interpretation provides that the amount of petitioners' overpayments are to be determined through an application of section 6403. For that reason, petitioners will not be making installment payments of their estate tax liabilities in the future, and will not be required to pay any interest in the future under section 6166. Accordingly, we need not address the executrix' assertion as to the deductibility of such interest.

We do note, however, that, in addition to being entitled to a determination of an overpayment of tax, as provided by this Court's interpretation of section 6403, above, petitioners are also entitled to a determination of an overpayment of the interest each has paid with respect to that part of their estate tax liability previously deferred under section 6166. See *Estate of Baumgardner v. Commissioner,* 85 T.C. 445 (1985), for a discussion of our jurisdiction to hold that the estates are so entitled. The amount of such overpayment of interest shall be determined in accordance with our above application of section 6403.

To reflect the foregoing,

*Decision will be entered under Rule 155.*